UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 06-238-JBC

MICKEY J. COMBS,                                                                                  PLAINTIFF,

V.                              **MEMORANDUM OPINION AND ORDER**

JO ANNE BARNHART, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,                                                DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of his application for Disability Insurance Benefits and Supplemental Security Income (DE 11, 12).  The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

**I. Overview of the Process**

Judicial review of the ALJ's decision to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)).  "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).   The court

does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility. *See id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

**II. The ALJ's Determination**

The plaintiff is a thirty-four-year-old male with an eighth-grade education and has past relevant work ("PRW") as an auto body repairman. AR 19, 102. He alleges disability beginning on June 28, 2003, due to a back injury suffered in a motorcycle accident and anxiety. AR 19. The plaintiff filed a claim for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on August 22, 2003, which was denied initially and on reconsideration. AR 18. After a hearing held on May 25, 2005, Administrative Law Judge ("ALJ") Roger L. Reynolds determined that the plaintiff did not suffer from a disability as defined by the Social Security Act. At Step 1, the ALJ determined that the plaintiff had not engaged in substantial gainful activity. At Step 2, the ALJ found that the plaintiff's compression fractures of T12, L1 and L2 were severe impairments. The ALJ then determined that the plaintiff's impairments did not meet or equal a listing in the Listing of Impairments at Step 3. At Step 4, the ALJ found that the plaintiff was unable to perform his PRW. The ALJ concluded at Step 5, however, that the plaintiff could perform a significant number of other jobs in the national economy at the sedentary exertional level. AR 26-27. On May 29, 2006, the Appeals Council denied the plaintiff's request for review of the ALJ's decision, *see* AR 10, and the plaintiff commenced this action.

**III. Legal Analysis**

The plaintiff objects to the ALJ's determination that he could work at the light exertional level on four grounds: (1) that the ALJ erred in concluding that his impairments did not meet a listing in the Listing of Impairments; (2) that the ALJ improperly formulated his residual functional capacity ("RFC"); (3) that the ALJ erred in using the Medical-Vocational Guidelines (hereinafter, "Grids") in his determination, at Step 5, that the plaintiff was not disabled; and (4) that the ALJ

erred in denying his request for a supplemental hearing.

### A. The Listing of Impairments

Under the Commissioner's regulations, if a disability claimant has an impairment which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment, the Commissioner will find him disabled without considering his age, education, and work experience. 20 C.F.R. § 404.1520(d). The plaintiff faults the ALJ for not finding that his compression fractures of T12, L1 and L2 did not meet or equal a listing in the Listing of Impairments.

To satisfy the criteria for the Listing of Impairments regarding spinal disorders, a claimant is required to present evidence of a spinal disorder "(e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root . . . or the spinal cord" along with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting or supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

An MRI of the plaintiff's lumbar spine that was performed on January 29, 2004, revealed evidence of compression fractures, spinal stenosis, and herniation of the nucleus pulposus. AR 239. Thus, the plaintiff clearly suffers from a spinal disorder as that term is defined in § 1.04. To meet or equal the requirement of a listing, however, a claimant must have a medically determinable impairment that satisfies *all* of the criteria of a listing. 20 C.F.R. § 416.925(d) (emphasis added). The Commissioner argues that the plaintiff does not equal the requirements for presumptive disability set forth in § 1.04A, § 1.04B, or § 1.04C.

The court agrees with the Commissioner. The records of the plaintiff's treatment with Dr. Cesar Agtarap, which date from September of 2003 to April of 2005, reveal: (1) no evidence of muscle atrophy; (2) some limitation of motion in the plaintiff's spine, with the rest of the plaintiff's musculoskeletal exam being within normal limits; and (3) normal motor strength in the plaintiff's back and lower extremities. AR 150-51, 193-238. Further, Dr. Douglas Tzanetos, a consulting physician, examined the plaintiff on July 23, 2005, and found that the plaintiff had normal strength in his lower extremities and normal reflexes. AR 257. While Dr. Tzanetos did note some limitations in the plaintiff's spinal flexion, he found that the plaintiff had no motor deficits, no evidence of nerve root compression, and no muscle atrophy. *Id.* The ALJ did not err in finding that the plaintiff did not meet the criteria of § 1.04A. With regard to § 1.04B, the plaintiff has presented no

evidence that he suffers from spinal arachnoiditis that was confirmed as required by that listing.

Finally, with regard to § 1.04C, the plaintiff has not shown an inability to ambulate effectively as stated in that listing. The inability to ambulate effectively means "an extreme limitation of the ability to walk" and is "defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(2)(b)(1). Although the plaintiff did use an assistive device for some time following his motorcycle accident in June of 2003, there is no evidence in the record that would indicate that he still requires such a device. Indeed, Dr. Christopher A. Catt noted that the plaintiff did not use an ambulatory device when he examined the plaintiff on July 8, 2005, *see* AR 245, and Dr. Tzanetos found that the plaintiff suffered from no impairment in toe or heel walking. AR 257. The ALJ's finding that the plaintiff did not meet or equal a listing in the Listing of Impairments is supported by substantial evidence.

**B. The RFC Determination**

The plaintiff claims that, in light of the medical conclusions of Dr. James Bean, the ALJ erroneously found that the plaintiff could perform sedentary work. Dr. Bean examined the plaintiff on July 6, 2004, and determined that the plaintiff's "future work should involve light rather than heavy labor and try to aim for lifting limits under 20 pounds without requiring repetitive bending, stooping, or twisting."

AR 241.  The ALJ explicitly cited Dr. Bean's evaluation in his opinion.  AR 24.  The ALJ also noted that Dr. Tzanetos recommended that the plaintiff lift no more than 10 to 20 pounds for one-third of an eight-hour workday and that the plaintiff be restricted to occasional climbing, stooping, kneeling, crouching, or crawling.  AR 24, 258.  After considering these reports and the other medical evidence in the record, the ALJ concluded that the plaintiff could "perform a significant range of sedentary work" but restricted the plaintiff to "occasional bending, twisting, stooping, kneeling, crouching, or crawling and no exposure to temperature extremes or vibrations."  AR 24.  The ALJ's RFC determination accurately reflects Dr. Bean's assessment of the plaintiff's ability to work, and it is consistent with that evaluation and the remainder of the medical evidence of record.  Thus, the ALJ did not err in his formulation of the plaintiff's RFC.

### C. The ALJ's Use of the Grids

The plaintiff alleges that the ALJ's decision to use the Grids to evaluate his ability to work was improper because he suffers from a nonexertional impairment.  When a social security claimant suffers from a nonexertional impairment, reliance upon the Grids requires reliable evidence that the claimant's nonexertional limitations do not significantly limit the range of work permitted by his exertional limitations.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); *see also Abbott v. Sullivan,* 905 F.2d 918, 926-27 (6th Cir. 1990).  The Commissioner has found that "postural limitations or restrictions related to such activities as climbing

ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." SSR 96-9p, 1996 WL 374185, at *7.  Further, a "restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work." *Id.* at *8.  Thus, Dr. Bean's findings that the plaintiff should not perform jobs requiring "repetitive bending, stooping, or twisting," AR 241, did not preclude the ALJ from using the grids because these limitations do not significantly limit the plaintiff's ability to work at the sedentary level.  In addition, the ALJ took the limitations recommended by Dr. Bean into account when formulating the plaintiff's RFC and nonetheless determined that the plaintiff could perform a significant number of jobs in the national economy at the sedentary exertional level.  The ALJ's reliance on the Grids was not erroneous.[1]

**D. Supplemental Hearing**

During the hearing held on May 25, 2005, the ALJ was preparing to call a Vocational Expert ("VE") to testify when the plaintiff's counsel moved for a

---

[1] The plaintiff also points out that he has only an eighth-grade education in support of his claim for benefits.  The court construes this statement as a claim that the plaintiff suffers from a mental impairment that amounts to a nonexertional limitation.  A mental impairment must produce work-related limitations that significantly affect the claimant's ability to perform a full range of work at a given exertional level before a mental impairment precludes the use of the Grids.  *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Buress v. Sec'y of Health and Human Servs.,* 835 F.2d 139, 142 (6th Cir. 1987).  Since the plaintiff has presented no evidence that his educational status significantly affects his ability to perform sedentary work, the ALJ did not err in using the Grids at Step Five.

directed verdict. AR 296. The ALJ indicated that he wanted to review a psychological and orthopedic examination of the plaintiff before he ruled on the plaintiff's entitlement to benefits. *Id.* At that point, the hearing was adjourned, and the VE did not testify.

On August 17, 2005, the ALJ sent the plaintiff a letter explaining that the ALJ had examined the reports from Drs. Catt and Tzanetos. AR 112. The plaintiff responded on August 26, 2005, and objected to the ALJ's consideration of the examination by Dr. Tzanetos on the ground that his employer, Cardiopulmonary Laboratories, Inc., is biased in favor of the Commissioner. AR 113. The plaintiff also requested a supplemental hearing, *see id.*, a request that was later denied. The plaintiff now asserts that the ALJ's reliance on Dr. Tzanetos's report and the ALJ's failure to hold a supplemental hearing were erroneous.

The plaintiff has presented no evidence that Dr. Tzanetos or Cardiopulmonary Laboratories, Inc., is biased. While Cardiopulmonary Laboratories, Inc., does receive payment from the Commissioner for performing consultative examinations, this does not amount to proof of favoritism toward the Commissioner or prejudice against the plaintiff. Indeed, Dr. Tzanetos's findings are consistent with the other medical evidence in the record, and the plaintiff has not challenged them on any ground other than the alleged bias currently at issue.

The court has already concluded that the ALJ properly relied on the Grids at Step Five of his evaluation; thus, the ALJ did not need to rely on any testimony

from a VE.  Since the court has also found that the ALJ properly relied on the reports submitted by Drs. Catt and Tzanetos, the ALJ did not need to hold another hearing merely to address the plaintiff's claims of bias.  Under the circumstances, a supplemental hearing was not necessary, and the ALJ did not err in failing to conduct one.

**IV. Conclusion**

**IT IS ORDERED** that the Commissioner's motion for summary judgment (DE 12) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (DE 11) is **DENIED**.

Signed on April 6, 2007

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY